UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| BENNNIE GRAY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:18cv1402(KAD) |
| | : |
| OFFICER BRIDGET NORDSTROM, ET AL.,<br>    Defendants. | :<br>: |

## MEMORANDUM OF DECISION RE: DEFENDANTS EMERY AND NORDSTROM'S MOTION FOR SUMMARY JUDGMENT

In this civil rights action, the plaintiff, Bennie Gray ("Gray"), currently incarcerated at Cheshire Correctional Institution, challenges, *inter alia,* the September 5, 2017 search of a car in which he was a passenger, the pat-search of his person, the seizure of evidence from the car and his resulting arrest on drug possession charges and remand to the custody of the Department of Correction for violating his parole. Upon initial review, *see* 28 U.S.C. § 1915A(b), the Court permitted Fourth Amendment claims to proceed against Groton Police Officers Bridget Nordstrom ("Nordstrom") and Robert Emery ("Emery") and Norwich Parole Officer Belval[1] ("Belval") in their individual capacities. *See* ECF No. 9.

Defendants Nordstrom and Emery now seek summary judgment as to all claims asserted against them. For the reasons set forth below, the motion is granted.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule

---

[1] Defendant Belval has filed a motion to dismiss the Fourth Amendment claims asserted against him. *See* ECF No. 61. The Court addresses his motion to dismiss in a separate ruling.

56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Which facts are material is determined by the substantive law.  *Id.*

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Material Facts**

The following material facts are taken from the Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1"), [ECF No. 52-2], and Exhibits A through I, [ECF. Nos. 51-3 to 51-13], filed in support of the Local Rule 56(a)1 Statement and the Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2") and Exhibits A through J, [ECF No. 70], at 9-53, filed in support of the Local Rule 56(a)2 Statement, to the extent that the facts are supported by citations to (1) the affidavit [or declaration] of a witness competent to testify as to the facts at trial, or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)3.

On September 5, 2017, Nordstrom was employed as an Investigator by the Groton Police Department and Emery was employed as a Detective by the Groton Police Department.  Defs.' L.R. 56(a)1 ¶ 1.  As of April 21, 2017, Gray was on parole and was subject to searches of his person by parole officers or their agents pursuant to a Statement of Understanding and Agreement Conditions of Parole that Gray had signed on that date.  *Id.* ¶ 2.

On September 5, 2017, Nordstrom was working with Emery and Belval as part of the Groton Town Police Department/Regional Community Enhancement Task Force ("Task Force").  *Id.* ¶ 3; Ex. D at 2-3, ECF No. 52-7.  On that date, the Task Force received a telephone call from a confidential informant ("CI") who was interested in providing narcotics-related information.  *Id.*  Nordstrom had previously worked with the CI and found him to be reliable because information that he had provided had led directly to seizures of narcotics and arrests related to those seizures.  *Id.* ¶ 4.  The CI indicated that Gray was involved in selling heroin and crack cocaine in Groton and that he had purchased heroin from Gray approximately twenty times in the preceding several months.  *Id.* ¶ 5.  Further, on one occasion, he had observed a firearm in Gray's waistband.  *Id.*  The CI agreed to arrange to buy narcotics from Gray in Groton later that

3

day and provided Nordstrom with the telephone number that he used to contact Gray.  *Id.* ¶ 6.

Nordstrom was aware that Bobbi Jo Viger {"Viger") had driven Gray to a meeting with his parole officer in New Britain, Connecticut, in a green Toyota Camry earlier on September 5, 2017.  *Id.* ¶ 7.  Nordstrom and Emery also knew Viger to be a drug user because Nordstrom, with the assistance of Emery, had arrested Viger in May 2017 for possession of drug paraphernalia.  *Id.* ¶ 8.  At the time of her arrest, Viger had driven a drug dealer to a motel in Groton, Connecticut to sell heroin.  *Id.*

During the afternoon of September 5, 2017, the CI advised Nordstrom that he and Gray had exchanged text messages and telephone calls before agreeing to meet at a Walgreen's drug store in Groton, Connecticut.  *Id.* ¶ 9.  At approximately 2:30 p.m., the CI informed Nordstrom that Gray had contacted him and was about to drive into the Walgreen's parking lot in Groton.  *Id.* ¶ 10.  Nordstrom, Emery, and other officers, including Belval, observed Viger drive her green Camry into the Walgreen's parking lot with Gray in the front passenger seat and Rachel Mead in the back seat.  *Id.* ¶11.  Rachel Mead was known to Emery from a prior arrest for possession of narcotics and was still on probation.  *Id.*  After Viger backed her vehicle into a parking space, Nordstrom, Emery, Belval and another Groton Police Officer exited their vehicles and approached Viger's vehicle.  *Id.* ¶¶ 11-12.  Some of the law enforcement officers who approached Viger's vehicle had their guns drawn.  Pl.'s L.R. 56(a)2; ¶ 12; Ex. B, ECF No. 70, at 19.  Gray exited Viger's vehicle with his hands raised.  *Id.* ¶ 13.  An officer or a detective, other than Nordstrom, pat-searched Gray and passed him to the custody of a parole officer.  *Id.* ¶ 13.

After Viger and Rachel Mead exited the vehicle, Nordstrom entered the front of the vehicle with a brown evidence bag and searched that area.  *Id.* ¶ 14.  Gray did not see anything in

4

the brown bag prior to Nordstrom searching the vehicle or observe the items that Nordstrom seized from the vehicle. *Id.* ¶ 15. Nordstrom completed a police report and an Inventory of Property Seized Without A Warrant form documenting the following items seized from the vehicle: an unopened bottle of inosotil powder, one knotted bag containing a white rock-like substance consistent with crack cocaine, three knotted bags containing a beige powder consistent with heroin, a white LG smart phone and a black Trac phone. *Id.* ¶ 14; Ex. D at 2-6, 15, ECF No. 52-7.

As soon as Nordstrom announced that she had located narcotics in the vehicle, a decision was made by officers at the scene to remand Gray to custody because he was on parole and a parole officer placed Gray in the back of his vehicle and transported Gray to the Groton Police Department. *Id.* ¶¶ 16, 19. Nordstrom questioned Viger at the scene. *Id.* ¶ 17. Viger denied any knowledge about the narcotics seized from the vehicle but acknowledged that she had been driving Gray around in exchange for crack cocaine. *Id.* No narcotics were found on Viger's person. *Id.* Viger showed Nordstrom her phone and Nordstrom observed no narcotics-related conversations. *Id.*

Nordstrom also questioned Rachel Mead at the scene. *Id.* ¶ 18. Mead stated that she had called Gray earlier that day to be picked up because she was stranded in Willimantic. *Id.* Mead showed Nordstrom her phone and Nordstrom observed no narcotics-related conversations. *Id.* No narcotics were found on Mead's person. *Id.*

Nordstrom arrested Gray on charges of possession of cocaine in violation of Connecticut General Statues § 21a-279(a); possession of heroin in violation of Connecticut General Statues § 21a-279(a); possession with intent to sell cocaine in violation of Connecticut General Statues §

5

21a-278(b); and possession with intent to sell heroin in violation of Connecticut General Statues § 21a-278(b). *Id.* ¶ 19; Pl.'s L.R. 56(a)2 ¶ 16; Ex. F, ECF No. 70, at 43. After a police officer processed Gray on these criminal charges, the officer released Gray to a parole officer on a remand to custody order and the parole officer transported Gray to Corrigan-Radgowski Correctional Institution. Defs.' L.R. 56(a)1 ¶ 19; Ex. D at 15, ECF No. 52-7.

Nordstrom did not touch Gray during the events involving his arrest on September 5, 2017. *Id.* ¶ 20. On December 1, 2017, in *State v. Gray*, Docket No. K10K-CR17-338904-S, an assistant state's attorney informed Superior Court Judge Ernest Green that the State had decided not to disclose the identity of the CI and therefore entered a *nolle* as to the criminal charges pending against Gray. *Id.* ¶ 21; Ex. E, ECF No. 52-8.

**Discussion**

Gray asserts a number of Fourth Amendment claims arising out of the events of September 5, 2017. In seeking summary judgment, defendants Nordstrom and Emery argue: reasonable suspicion existed for the stop of Viger's vehicle; the undisputed evidence demonstrates that Gray exited the vehicle voluntarily after the stop and was not seized by any officer; the pat search of Gray after he exited the vehicle was reasonable; the arrest of Gray was supported by probable cause; the disposition of the criminal charges that arose from Gray's arrest did not terminate in his favor; and they did not otherwise unreasonably restrain his liberty. In the alternative, Defendants Nordstrom and Emery contend that they are entitled to qualified immunity as to all Fourth Amendment claims asserted against them.

**Fourth Amendment - Detention**

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is "reasonableness." *Riley v. California*, 573 U.S. 373, 381-82 (2014) (internal quotation marks and citation omitted). In *Terry v. Ohio,* 392 U.S. 1 (1968), the Supreme Court carved out an exception to the general rule requiring probable cause for a seizure, permitting an investigating officer briefly to detain an individual for questioning or for investigative purposes if the officer has a reasonable suspicion "that criminal activity may be afoot." *Id.* at 30. "Whether probable cause or reasonable suspicion exists is an objective inquiry; the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." *Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). Reasonable suspicion "may be based upon information from a confidential informant so long as the tip bears sufficient indicia of reliability." *United States v. Elmore,* 482 F.3d 172, 179 (2d Cir. 2007) (internal quotations omitted).

Nordstrom avers that on September 5, 2017, the CI provided information to her and the Task Force about Gray's past sales of crack cocaine and heroin in Groton, Connecticut and the purchases of heroin that he had made from Gray on approximately twenty occasions in the preceding several months. The CI further stated that he was willing to arrange a meeting to purchase a quantity of heroin from Gray later that day. *Id.*, Ex. D, Police Report – Nordstrom Narrative, at 1-2, ECF No. 52-7. Nordstrom states that prior to September 5, 2017, she had worked with the CI and that the CI had provided reliable information to her that had led to arrests

7

and seizures of narcotics. *Id.*, Ex. I, Nordstrom Aff. ¶¶ 4-5. The CI's prior proven reliability coupled with information that Gray had agreed to meet him at Walgreen's in Groton to sell him heroin during the afternoon of September 5, 2017 constituted a reasonable basis for Nordstrom to suspect that Gray would engage in criminal activity in the Walgreen's parking lot. *See McColley v. Cnty. of Rensselaer,* 740 F.3d 817, 842 (2d Cir. 2014) (Information provided by a confidential informant may "be sufficiently reliable to establish probable cause" where the investigating police had "received consistently reliable information in the past" from that informant.).

Gray contends, without evidence, that Nordstrom lied about the existence of a CI and/or that Zachary Stewart was in fact the CI. Mem. Opp'n Mot. Summ, J., ECF No. 70, at 2-3; Pl.'s L.R. 56(a)2 ¶ 3. Gray included allegations in the complaint that on September 5, 2017, he spoke to Zachary Stewart twice on the phone and agreed to meet him at Walgreen's in Groton, Connecticut to collect money that Stewart owed to him. Compl. ¶¶ 19-20. Gray has not submitted admissible evidence or identified a witness competent to testify that the CI to whom Nordstrom avers that she spoke did not exist or that Zachary Stewart was the CI. Gray is not a witness who could competently testify as to what the CI said or did not say to Nordstrom on September 5, 2017 or any prior occasions. Nor has Gray provided evidence that Nordstrom and Emery knew or even had reason to suspect that the CI was lying when he spoke to Nordstrom on September 5, 2017. Indeed, the information provided by the CI was corroborated by the fact that Gray arrived in a car driven by a known drug user at the location in Groton that the CI had identified as the location where the sale of narcotics would occur and at the approximate time that the CI had said the sale would occur. Accordingly, Nordstrom and Emery had sufficient

reasonable suspicion to stop the vehicle in which Gray was riding and Emery and Nordstrom are entitled to summary judgment on the Fourth Amendment claim which is based on the stop of Viger's vehicle and Gray's detention for investigative purposes at the scene of the stop.

### Fourth Amendment - Unlawful Seizure – Removal from Vehicle

Gray alleged in his complaint and in a declaration filed in opposition to the defendants' motion for summary judgment, that on September 5, 2017, he was physically removed from Viger's vehicle in violation of the Fourth Amendment.  Compl. ¶ 21; Mem. Opp'n Mot. Summ. J, Ex. E, Gray Decl. ¶ 2, ECF No. 70, at 40.  As to this claim, Nordstrom and Emery argue that Gray conceded at his deposition that he exited/stepped out of the car of his own volition.  Defs.' L.R. 56(a)1 ¶ 12, Ex. A, Gray's Dep., at 63:6-13; 150:19-22, ECF No. 52-4.  Although Gray contends that he was "influenced" by the fact that some law enforcement officers had their firearms drawn as they approached the vehicle, he does not dispute that no law enforcement officer ordered him to exit the vehicle or physically removed him from the vehicle.  Pl.'s L.R. 56(a)2; ¶ 12.  Nor does he dispute the fact that he stepped out of the vehicle with his hands raised when he saw police and parole officers approaching the vehicle.  Pl.'s L.R. 56(a)2; Ex. B, Gray's Dep., at 63; ECF No. 70, at 19.  Accordingly, Gray has not stated a Fourth Amendment claim that Nordstrom, Emery, or any other law enforcement officer unreasonably seized him from the vehicle and the motion for summary judgment is granted as to this Fourth Amendment claim.

### Fourth Amendment - Unlawful Search – Pat Down at Scene of Arrest

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *United States v. Navas*, 597 F.3d 492,

9

497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Exceptions to the warrant requirement include "stop and frisk" searches.  *See Terry,* 392 U.S. at 30.  As part of a *Terry* stop, an officer may conduct a pat-down frisk consisting of a "carefully limited search of the outer clothing ... in an attempt to discover weapons" if the officer reasonably believes that person to be armed and dangerous.  *Id.*

Gray alleged in the complaint that after he exited the vehicle, he was "given a pat down and had nothing illegal on his person."  Compl., ECF No. 1, at 3 ¶ 21.  He did not identify which defendant may have engaged in the pat-down search.  During his deposition on December 13, 2019, however, Gray testified that a short, white officer that he believes was Emery, pat-searched him after he exited the vehicle of his own accord.  Defs.' L.R. 56(a)1, Ex. A, Gray Dep. at 64-65, 67, 109, 154, ECF No. 52-4.  It is undisputed that Nordstrom was not the officer that conducted the pat search.  Defs.' L.R. 56(a)1 ¶ 20; Pl.'s L.R. 56(a)2 ¶ 20.

Emery argues that in view of Gray's known status as a parolee, the reasonable suspicion that Gray was in possession of narcotics with intent to sell and the fact that a CI had advised the members of the Task Force, including himself and Nordstrom, that he had observed Gray with a firearm in his waistband on a prior occasion, it was reasonable to conduct an initial pat-down search of Gray's outer clothing to determine whether he was armed.  In opposition to this argument, Gray declares that he was not in possession of a firearm on September 5, 2017 or at any time in 2017.  The Court agrees with Emery.

Gray's assertions do not create a genuine dispute as to whether Emery was justified in performing the pat search. The information received from the CI, detailed above, gave rise to a reasonable suspicion that Gray might be in possession of a firearm.  Indeed, the connection

10

between firearms and narcotics trafficking is a reality with which law enforcement is confronted on a near daily basis. *See e.g., United States v. Jarvis,* 237 F.App'x 636, 638-9 (2d Cir. 2007)(summary order)(finding officers had probable cause to believe firearms found during an authorized search for marijuana, among other items, "were connected to the drug trafficking …"); *United States v. Gaskin,* 364 F.3d 438, 457 (2d Cir. 2004)(finding probable cause to believe guns would be found in marijuana trafficking defendant's car based on, among other reasons, an FBI agent's experiential testimony that "guns are tools of the narcotic trade, frequently carried by dealer, particularly when they engage in transactions involving drugs or money."). Accordingly, the motion for summary judgment is granted as the Fourth Amendment claim arising out of the pat search.[2]

### Fourth Amendment - Unlawful Seizure – False Arrest

An arrest by a law enforcement official constitutes a seizure under the Fourth Amendment and is not reasonable unless it is founded upon probable cause to believe that the individual has committed a crime. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). Probable cause exists to arrest an individual without a warrant if "the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

---

[2] Detective Emery includes an argument regarding an allegation that either he or Belval handcuffed Gray after the pat search. In ruling on Gray's motion for partial summary judgment, the Court observed that Gray had included an unsupported allegation in his Local Rule 56(a)1 Statement that he had been placed in handcuffs at the scene and that no similar allegation appeared in the complaint. Further, allegations regarding handcuffing are not in either of Gray's declarations in opposition to the instant motion for summary judgment. Accordingly, there is no claim stemming from Gray's alleged placement in handcuffs before the Court.

11

False arrest claims brought pursuant to section 1983 as violations of the Fourth Amendment's right "to be free from unreasonable seizures, are substantially the same as claims for false arrest ... under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted). In a section 1983 action, the elements of claims for false arrest are controlled by state law. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). Connecticut law defines false arrest or false imprisonment as "the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (internal quotation marks and citation omitted). "Connecticut law places the burden of proving an unlawful arrest on the plaintiff." *Russo*, 479 F.3d at 203. As such, "the overall burden of proving the absence of probable cause" for the arrest also falls on the plaintiff. *Davis*, 364 F.3d at 433. A plausible false arrest or false imprisonment claim under Connecticut law also requires that the underlying charges for which the plaintiff was arrested to have terminated in his or her favor. *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (noting favorable termination is an element of a section 1983 claim "sounding in false imprisonment or false arrest" under Connecticut law) (citing *Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cir. 1992)). The favorable termination requirement demands a "show[ing] that the underlying criminal proceeding ended in a manner that *affirmatively indicates [the arrestee's] innocence.*" *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (emphasis added).

### Probable Cause

Gray's false arrest claim is based on his allegation that neither Nordstrom, Emery, nor Belval had probable cause to believe that he had committed a crime because Nordstrom planted

12

the narcotics that she allegedly seized from Viger's vehicle. Compl. ¶ 23; IRO, ECF No. 9, at 8; Pl.'s L.R. 56(a)2 ¶ 14.  In her affidavit in support of the motion for summary judgment, Nordstrom avers that the police report and Inventory of Property Seized Without A Search Warrant that she prepared on September 6, 2017 accurately reflects that she seized bags of heroin and crack cocaine, cellular phones and a bottle inosotil powder from Viger's car on September 5, 2017. Defs.' L.R. 56(a)1, Ex. B, Nordstrom Aff. ¶¶ 5-9.  Nordstrom further avers that she did not plant the narcotics in the vehicle but instead used the brown evidence bag to collect the narcotics from the vehicle.  *Id.* ¶ 8.  In response, Gray reasserts his allegation from the complaint that Nordstrom planted the narcotics in the vehicle and resubmits a prior declaration, filed in support of his own partial motion for summary judgment, that includes the same allegation. Gray also relies on the complaint as support for the allegation.  Mem. Opp'n Mot. Summ. J at 2-3, Ex. E, Gray Decl. ¶ 3, ECF No. 70, at 40; Compl. ¶ 23.  During Gray's deposition, however, he conceded that he did not see whether anything was in the brown evidence bag used by Nordstrom at the time she entered the vehicle to conduct her search and that he did not see what items she collected from the vehicle and placed in the bag.  Defs.' L.R. 56(a)1, Ex. A, Gray's Dep., at 73:4 – 74:12; 75:2-11; 95:1–4, ECF No. 52-4.  The only item that he saw in Nordstrom's hand at one point during the search was a cigarette pack.  Ex. A, Gray's Dep. at 75:2-11.  In short, Gray did not see Nordstrom plant the narcotics in Viger's vehicle.  *Id.* at 95:1–4. Nor has he offered any direct evidence that would raise a genuine issue of material fact on this issue in response to Nordstrom's affidavit.  Specifically, Gray cannot create a genuine dispute of a material fact by resubmitting a declaration that merely accuses Nordstrom of planting evidence when his sworn deposition testimony establishes that he has no personal knowledge to support

13

such an accusation. *See, e.g., Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement ... without explaining the contradiction or attempting to resolve the disparity."); *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (holding that a party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony").

Gray suggests in his deposition that the only explanation for Nordstrom's discovery of narcotics in the vehicle is that she must have planted the narcotics because a search of his person and a search of the vehicle conducted by New Britain parole officers earlier that day revealed no contraband. Pl.'s L.R. 56(a)2, Ex. B, Gray's Dep., at 95:1–16, ECF No. 70, at 23. Gray conceded that he was not present for the search of Viger's vehicle at the parole office and that after leaving the parole office, Viger stopped at multiple locations, including Manchester Community College, where Gray exited the vehicle and did not return to the vehicle for at least 30 minutes. *See* Ex. 1a, ECF No. 61-2, Gray's Dep., at 47:3 - 50:24; 55:23 - 58:6. Given these facts, the lack of contraband found during the searches of Gray and Viger's vehicle by New Britain parole officers earlier in the day on September 5, 2017 does not lead to the reasonable inference that Nordstrom planted the narcotics that she seized from Viger's vehicle later in the day on September 5, 2017. It is well-established that speculation and conjecture are insufficient to defeat summary judgment. *See, e.g.*, *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (stating "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment") (internal quotation marks and citation omitted); *Robinson*, 781

F.3d at 34 (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation") (quotation marks and citation omitted).; *Apostol v. City of New York*, No. 11-cv-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014) ("Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims–for example, that someone must have planted the [drugs]"), *aff'd,* 607 F. App'x 105 (2d Cir. 2015); *Bender v. Alvarez*, No. 06-cv-3378, 2009 WL 112716, at *9 (E.D.N.Y. Jan. 16, 2009) ("Plaintiff fails to provide any evidence demonstrating that the evidence was planted in his residence except for his unsupported statement"); *Carlisle v. City of New York*, No. 05-cv-6825, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) ("Although plaintiff alleges that the detectives fabricated and planted evidence, he fails to offer even a scintilla of support for these allegations").

The undisputed evidence reflects that Emery and Nordstrom were aware that Gray had come to the Walgreen's parking lot to sell heroin to the CI, Viger, a known drug user who had previously chauffeured individuals who sold narcotics in exchange for crack cocaine, was driving Gray that day, and at least three bags of the suspected heroin were found in the vehicle in which he was riding. Further, investigation into both Viger and Mead, the other two occupants of the vehicle, revealed no evidence of narcotics related activity.  Accordingly, Gray has not demonstrated the existence of a genuine dispute as to whether Nordstrom and Emery had probable cause to arrest him on September 5, 2017 and they are entitled to summary judgment on Gray's Fourth Amendment false arrest claim.

**Conclusion**

The Motion for Summary Judgment, [**ECF No. 52**], filed by Defendants Nordstrom and

Emery is **GRANTED** as to all claims asserted against them.

SO ORDERED at Bridgeport, Connecticut this 2nd day of March 2021.

_____/s/_____
Kari A. Dooley
United States District Judge